**MILBERG LLP**
PAUL F. NOVAK (*pro hac vice*)
One Kennedy Square
777 Woodward Avenue, Suite 890
Detroit, MI 48226
Telephone: (313) 309-1760
Facsimile: (313) 447-2038

**MILBERG LLP**
PETER SAFIRSTEIN (*pro hac vice*)
PEGGY WEDGWORTH (*pro hac vice*)
One Pennsylvania Plaza
New York, New York 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**CARTUSCIELLO & ASSOCIATES, P.C.**
NEIL CARTUSCIELLO (*pro hac vice*)
104 Mountainside Road
Mendham, New Jersey 07945
Telephone: (973) 543-8204

Attorneys for Defendant/Counterclaimant
MAYER LABORATORIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHURCH & DWIGHT CO., INC. | ) Case No. CV10-04429 EMC |
| | ) |
| Plaintiff, | ) **MAYER LABORATORIES, INC.** |
| | ) **NOTICE OF MOTION AND MOTION** |
| vs. | ) **FOR SANCTIONS AS A RESULT OF** |
| | ) **SPOLIATION OF EVIDENCE** |
| MAYER LABORATORIES, INC. | ) |
| | ) **HEARING DATE: March 16, 2012** |
| Defendant. | ) **HEARING TIME: 1:30 p.m.** |
| | ) **COURTROOM: TBD** |
| | ) |
| | ) |

| | | |
|---|---|---|
| MAYER LABORATORIES, INC.<br>MOTION FOR SANCTIONS AS A RESULT OF<br>SPOLIATION OF EVIDENCE | | Case No. CV10-04429 EMC |

1  TO CHURCH & DWIGHT CO., INC. AND ITS ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on March 16, 2012, at 1:30 p.m., at the above-entitled

3  Court located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA,

4  defendant/counterclaimant Mayer Laboratories, Inc. will and hereby does move this Court for an

5  order granting sanctions against Church & Dwight, Co., Inc ("C&D"). The defendant makes this

6  motion pursuant to the inherent authority of this Court on the grounds that ███████████

7  █████████████████████████████████████████████████████████

8  █████████████████████████████████████████████████████████

9  █████████████████████████████████████████████████████████

10  █████████████████████████████████████████████████████

11       This motion is based on the attached Memorandum of Points and Authorities, the

12  Declarations of Peter Safirstein and Paul McVoy, the pleadings on file and discovery in this

13  matter, and such other evidence as may be presented to the Court, and any further grounds the

14  Court deems just.

15       Dated: February 7, 2012

16                                          By: /s/  Peter Safirstein
17                                          Peter Safirstein (*pro hac vice*)
                                            Peggy Wedgworth (*pro hac vice*)
18                                          MILBERG LLP
                                            One Pennsylvania Plaza
19                                          New York, New York 10119
                                            Telephone:  (212) 594-5300
20                                          Facsimile:  (212) 868-1229

21

22

23

24

25

26

27

28

| MAYER LABORATORIES, INC. | -i- | Case No. CV10-04429 EMC |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS .....................................................................................4

        A.      C&D's Failure to Preserve Relevant Evidence.........................................4

        B.      Craigie' ████████████████████ .............................6

        C.      C&D's Admission That ███████████████ .........................9

        D.      █████████████████████ .............................................9

        E.      C&D's Alleged Recovery Efforts Were Not Done to Recapture Certain
                Deleted Emails in this Litigation Which Has Created a Void Period..................12

        F.      C&D Has Failed to Recover Emails Deleted from October 31, 2008
                through July 14, 2009. ......................................................................14

        G.      C&D's Recent Misrepresentation in its Public Filings With The SEC. ...............15

III.    ARGUMENT ......................................................................................................16

        A.      This Court Has Inherent Authority to Sanction C&D for Spoliation. ..................16

        B.      Default Judgment Is An Appropriate Remedy............................................18

        C.      Alternatively, An Adverse Inference Is Necessary to Remedy C&D's
                Wrongful Conduct. ..........................................................................19

                1.      C&D Was Obligated to Preserve Evidence, and Has Failed to Take
                        Reasonable Efforts to Do So.................................................21

                2.      C&D is Culpable for the Wrongful Conduct of its CEO. ...........................22

                3.      Mayer Has Suffered Prejudice From C&D's Wrongful Conduct..............22

        D.      Mayer is Entitled to Attorneys' Fees. ....................................................24

IV.     CONCLUSION ..................................................................................................25

CERTIFICATE OF SERVICE .............................................................................27

| MAYER LABORATORIES, INC. | -ii- | Case No. CV10-04429 EMC |

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advantacare Health Partners v. Access IV*, 2004 WL 1837997 (N.D. Cal. Aug. 17, 2004).......18

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337 (9th Cir. 1995)...............18

*Aviva USA Corp. v. Vazirani*, 2012 WL 71020 (D. Ariz. Jan. 10, 2012)...........................24

*Church & Dwight v. Mayer Laboratories, Inc.*,
   2010 WL 3907038, at *2 (D.N.J. Sept. 28, 2010)..................................................4

*Church & Dwight Co., Inc. v. Mayer Laboratories, Inc.*,
   2011 WL 1225912 (N.D. Cal. Apr. 1, 2011)........................................................4

*Church & Dwight Co., Inc. v. Mayer Laboratories, Inc.*,
   2011 WL 5827222 (N.D. Cal. Nov. 18, 2011).......................................................2

*Church & Dwight Co., Inc. v. Mayer Laboratories, Inc.*,
   2011 WL 6119146 (N.D. Cal. Dec. 8, 2011)........................................................2

*Computer Assoc. Int'l, Inc. v. Am. Fundware, Inc.*, 133 F.R.D. 166 (D. Colo. 1990)............19

*Creative Science Systems, Inc. v. Forex Capital Markets, LLC.*,
   2006 WL 870973 (N.D. Cal. 2006)................................................................20

*Dae Kon Kwon v. Costco Wholesale Corp.*, 2010 WL 571941 (D. Hawai'i Feb. 17, 2010).......20

*Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993)..................................................20

*Hynix Semiconductor Inc. v. Rambus Inc.*, 591 F. Supp. 2d 1038 (N.D. Cal. 2006)............23

*In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)..........21, 24

*Karnazes v. County of San Mateo*, 2010 WL 2672003 (N.D. Cal. July 2, 2010)..................19

*Leon v. IDX Systems Corp.*, 464 F.3d 951 (9th Cir. 2006).......................17, 18, 20-22

*Lewis v. Ryan*, 261 F.R.D. 513 (S.D. Cal. 2009)....................................................20

*Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543 (N.D. Cal. 1987)...............20

*Otsuka v. Polo Ralph Lauren Corp.*, 2010 WL 366653, (N.D. Cal. Jan. 25, 2010)................17

*Philips Electronics North America Corp. v. BC Technical*,
   773 F. Supp. 2d 1149 (D. Utah 2011)..........................................................22, 23

*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644 (9th Cir.1997).........................23

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002)..................20

| MAYER LABORATORIES, INC. | -iii- | Case No. CV10-04429 EMC |
| --- | --- | --- |

*Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001)......................................17

*Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997 (D. Ariz. 2011)...................18, 24

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir.1992)..............17

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051 (9th Cir. 1998)..........................18, 24

*Veolia Transp. Services, Inc. v. Evanson*, 2011 WL 5909917 (D. Ariz. Nov. 28, 2011)......19, 24

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir.1999)..................................18

| MAYER LABORATORIES, INC. | -iv- | Case No. CV10-04429 EMC |

# I.   INTRODUCTION

Defendant and counterclaim-plaintiff Mayer Laboratories, Inc. ("Mayer") hereby submits this Memorandum of Law in Support of its Motion for the Imposition of Sanctions as a result of Church and Dwight's ("C&D") spoliation of evidence. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

outstanding questions concern the appropriate sanctions that should be imposed, if any.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[1]   Ex. 1, at 4 (C&D-INT-00001974). ████████████████████████████████

████████████ Consequently, these exhibits were previously labeled, and to assist in their identification, Mayer also cites this identification information as well as their initial Bates Number. Accordingly, Exhibit 1 is also herein identified as M296 at C&D-INT-00001974.

| MAYER LABORATORIES, INC. | -1- | Case No. CV10-04429 EMC |

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

This occurred only because of this Court's *fourth* order on December 9, 2011 (Dkt. No. 164),[3]

which required C&D to produce all of the documents it had provided to the FTC.[4]

      Based on this documentation, Mayer discovered a number of serious and shocking facts.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████

      Perhaps in anticipation of the forthcoming public revelations, C&D filed a Form 8-K

disclosure with the SEC on January 10, 2012 and admitted that it had taken "certain remedial and

other actions to address matters arising from the FTC investigation *and Mayer Labs litigation*."[5]

In particular, it noted that after the commencement of the FTC investigation and Mayer Labs

litigation, "the Company issued instructions to certain employees to preserve any emails or other

documents that might be relevant to the foregoing proceedings," and that its CEO and Chairman,

James Craigie, "deleted emails and has acknowledged doing so." As a result, C&D stated it had

retained outside counsel to investigate the matter and that its Board of Directors had determined

---

[2]     Ex. 2, (M299) at 4 ("Responses and Objections of Plaintiffs Church & Dwight to Defendant's First Post-Mediation Requests for the Production of Documents").
[3]     *See Church & Dwight Co., Inc. v. Mayer Laboratories, Inc.*, 2011 WL 6119146 (N.D. Cal. Dec. 8, 2011).
[4]     Notably, C&D adamantly refused to produce crucial FTC correspondence that was vital to uncovering the sheer magnitude of the document destruction that has occurred in this litigation. As this Court is aware, it required multiple court orders to force C&D to comply with this production. *See*, Dkt. 132, "Defendant's motion to compel production of FTC documents is granted;" Dkt. 146, 148, 160 and 164. *See also Church & Dwight Co., Inc. v. Mayer Laboratories, Inc.*, 2011 WL 5827222 (N.D. Cal. Nov. 18, 2011).

| MAYER LABORATORIES, INC. | -2- | Case No. CV10-04429 EMC |

that "Craigie's actions violated Company policies." It also announced that to remedy this problem, Craigie would "receive no award under the Company's annual incentive plan for 2011, no increase in salary in 2012 and no increase in the value of stock options to be granted to him in 2012, regardless of any increase in option grants that may otherwise be provided to any of the Company's other employees."

Although C&D's SEC filing claims that the company has successfully retrieved most of Craigie's deleted emails ███████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

Accordingly, Mayer moves for the imposition of sanctions on C&D including (1) dismissal of Counts III through X of C&D's Complaint; (2) a default judgment regarding Mayer's Counterclaims, or, alternatively an adverse inference, operative in all proceedings in this case, that emails destroyed by C&D and its employees after service of the original complaint in this case would have demonstrated C&D's unlawful monopolistic practices by violating federal and state antitrust laws; (3) an instruction that C&D notify parties opposing C&D in the 50 or so previous litigations that it has participated in where it has violated its obligations to preserve

---

5   *See* Ex. 3, Church & Dwight, Inc., SEC Form 8-K, (Jan. 10, 2012) (emphasis added).

| MAYER LABORATORIES, INC. | -3- | Case No. CV10-04429 EMC |

documents; (4) C&D shall be precluded from introducing any email evidence to or from its CEO due to the unavailable emails which cannot be reclaimed from the CEO's deleted emails; and (5) C&D shall pay to Mayer Labs all reasonable attorneys fees related to all the discovery efforts concerning spoliation and efforts of Mayer's counsel in bringing this motion.

## II.    STATEMENT OF FACTS

### A.    C&D's Failure to Preserve Relevant Evidence.

Mayer competes in certain markets with C&D in the manufacture and distribution of condoms and, in this litigation, challenges C&D's use of planogram rebate agreements which unlawfully restrict competition in the marketplace to the detriment of Mayer and consumers.[6] C&D preemptively sued Mayer seeking declaratory relief on November 21, 2008,[7] following Mayer's counsel's alerting C&D on October 30, 2008 to a possible lawsuit by Mayer for antitrust violations.[8] The next day, October 31, 2008, C&D's legal department issued its first "litigation hold" memo in connection with the Mayer litigation.[9]  Craigie was copied on this "litigation hold" memo,[10] ███████████████████████████████████████████████ ██████████████████[11]

On February 2, 2009, the FTC informed C&D in a letter of a parallel investigation by the U.S. government into C&D's anticompetitive marketing practices and its use of planogram rebate agreements.[12] ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

---

[6]    *See Church & Dwight Co., Inc. v. Mayer Laboratories, Inc.*, 2011 WL 1225912 (N.D. Cal. Apr. 1, 2011).
[7]    Complaint, Civ. No. 10-04429, Dkt. # 1, (N.D. Cal. Nov. 21, 2008).
[8]    *See Church & Dwight v. Mayer Laboratories, Inc.*, 2010 WL 3907038, at *2 (D.N.J. Sept. 28, 2010).
[9]    Ex. 4, (M288) (C&D-FTC3688866).
[10]    *Id.*
[11]    ████████████████████████████████

| MAYER LABORATORIES, INC. | -4- | Case No. CV10-04429 EMC |



12   Ex. 6, (M290) (C&D-FTC3603119).
13   *Id.*
14   *Id.* at 2 (C&D-FTC3603120).
15   Ex. 7, (M291) (C&D-FTC3491073).
16   Ex. 8, (C&D-FTC3492326).
17   Ex. 9, (M293) (C&D-FTC3491064).
18   Ex. 10, (M295) (C&D-FTC3491080).
19   Ex. 11, (M294) (C&D-FTC3651732).
20
21



**B.** <u>Craigie's</u>

Ex. 13, (M305) (C&D-FTC3688791).



to Mayer because if Mayer or the FTC had learned about Craigie's deletions at that time, it would have been far easier to reconstruct some of Craigie's missing emails. See McVoy Afft. ¶¶6-8.

[24] *Id.*
[25] *Id.* at 2 (C&D-FTC3688791).
[26]
[27] Ex. 14, Aug. 17, 2009 email, including Attachments A, B, & C (C&D-FTC3583983).

1    ████████████████████████████████████████████████████████████

2    ████████████████████████████████████████████████████████[29]███████████

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████[31]

9        In any event, based on the facts disclosed in C&D's FTC correspondence, it appears

10   C&D did not even bother to conduct a supposed search of Craigie's electronic documents until

11   August 2009, although its obligation to preserve relevant documents related to the condom

12   market began at least as early as October 31, 2008 with respect to Mayer and February 2, 2009

13   with respect to the FTC. █████████████████████████████

14   ████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ██.[32] ████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20

21

22

23   ─────────────────────
     [28]  Ex. 15, (M303) (C&D-INT-00002211), at 4 (C&D-INT-00002214).
24   [29]
     [30]  ████████████████████████████████████████████████████
25   ████████████████████████████████████████████████████████████
26   ████████████████████████████████████████████████████████████
27   [31]  Ex. 14, Aug. 17, 2009 email, including Attachments A, B, & C (C&D-FTC3583983).
     [32]  Ex. 15, (M303) (C&D-INT-00002211), at 4
28   [33]  Ex. 14, Aug. 17, 2009 email, at 13(C&D-FTC3583995).

| MAYER LABORATORIES, INC. | -8- | Case No. CV10-04429 EMC |

████████████████████████████████████████████████████████

████████████ [34]

**C.**     **C&D's Admission That** ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

Notably, C&D did not inform Mayer of its CEO's willful deletion of relevant emails until

August 2, 2011.[40] Moreover, as described below, C&D never disclosed that these missing emails

also included emails from the period October 31, 2008 to July 2009 and that C&D had made

absolutely no attempt to recover these earlier emails.

**D.**     ████████████████████████████

[34]     Ex. 17, (C&D-FTC3688793), at
[35]     Ex. 1, (M296) (C&D-INT-00001971), at 4 (C&D-INT-00001974).
[36]     *Id.*
[37]     Ex. 18, (M297) (C&D-INT-00001981).
[38]     *Id.*
[39]     Ex. 19, (M298) (C&D-INT-00030643).
[40]     Ex. 2, (M299) at 4 ("Responses and Objections of Plaintiffs Church & Dwight to
Defendant's First Post-mediation Requests for the Production of Documents").





49  Ex. 19, (M298) (C&D-INT-00030643), at 12 (C&D-INT-00030654).
53  Ex. 21, (M306) (C&D-INT-00002193).
54  Ex. 19, (M298) (C&D-INT-00030643), at 11 (C&D-INT-00030653).
55  *Id.*

Thus, Craigie's testimony indicates that he willfully destroyed evidence even after he became aware of the Mayer Labs litigation and subsequent FTC investigation.

**E.**   **C&D's Alleged Recovery Efforts Were Not Done to Recapture Certain Deleted Emails in this Litigation Which Has Created a Void Period.**

C&D has represented to the FTC that upon learning of Craigie's deleted emails, it took actions "to forensically recover" deleted emails from July 2009 until May 2010, but it admits its efforts have not successfully retrieved all of Craigie's missing emails. *See also* Affidavit of Paul

---

[56]
[57]   *Id.* at 127:6-10.
[58]
[59]   Ex. 19, (M298) (C&D-INT-00030643), at 11 (C&D-INT-00030653).

H. McVoy, attached hereto, which details C&D's inability to forensically reconstruct the missing

emails.   Moreover, C&D has made no similar efforts to recover emails for earlier periods

relevant to this litigation and therefore C&D has acted in bad faith.

     First, C&D failed to promptly contact Mayer about the missing emails. C&D claims its

efforts to recover Craigie's emails "began in February 2011, when the situation [] first became

known to attorneys at DLA Piper and individuals in the Legal Department and IT Department at

[C&D]."[61] However, despite apparently learning of its CEO's missing emails in February 2011,

C&D did not inform counsel for Mayer until August 2, 2011.[62]  It also strongly resisted all

attempts to produce additional details of its document destruction that had been disclosed in the

parallel FTC investigation in spite of several court orders that it produce documents that it had

provided to the FTC.[63]

     Second, C&D has failed to even attempt to fully recover the emails that its CEO willfully

deleted with regard to this litigation, thus, creating a void of Craigie's emails in the period from

October 2008 through July 2009, which is hereby referred to as the "Void Period."  This period

precedes C&D's own self-defined "Gap Period." ██████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

---

60 ████████████████████

61     Ex. 19, (M298) (C&D-INT-00030643),  at 3 (C&D-INT-00030645).

62     Ex. 2, (M299) at 4 ("Responses and Objections of Plaintiffs Church & Dwight to Defendant's First Post-mediation Requests for the Production of Documents"). ████████████

15, (M303) (C&D-INT-00002211), at 6 (Attachment 1) (C&D-INT-00002216).

63     See, Dkt. 132, "Defendant's motion to compel production of FTC documents is granted;" Dkt. 146, 148, 160 and 164.

64     Ex. 1, (M296) (C&D-INT-00001971), at 4 (C&D-INT-00001974).

65     Ex. 15, (M303) (C&D-INT-00002211), at 6 (Attachment 1) (C&D-INT-00002216).

| MAYER LABORATORIES, INC. | -13- | Case No. CV10-04429 EMC |
|---|---|---|

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ (emphasis added). This self-imposed limitation to search for emails that were deleted at the earliest on July 14, 2009 is manifestly incorrect and arbitrary for three reasons: (1) C&D was aware of potential litigation involving Mayer as early as **October 31, 2008**, which required an immediate litigation hold; (2) the FTC first cautioned C&D regarding the need to preserve documents on **February 2, 2009**,[67] (3) July 14, 2009 is merely the date C&D belatedly emailed a litigation hold memo to its employees concerning the FTC's **June 29, 2009** subpoena.[68]

Based on these facts, it is patently apparent that C&D has artificially constricted the scope of its document preservation obligations and its attempt to forensically recover its missing documents. Specifically, C&D failed to forensically search for documents during the "Void Period" in this litigation and, therefore, Mayer is arguably without nine months of relevant emails where Craigie was the custodian. In addition, C&D failed to forensically search for documents related to the FTC investigation that were created prior to July 14, 2009, even though its obligation to preserve FTC related documents officially began on or about February 2, 2009 – a five month gap which inexplicably never made it into C&D's definition of the "gap period." Indeed, when the FTC expressly asked C&D to "[i]dentify the earliest date of any document that was recovered,"[69] C&D replied that "[t]he earliest date of any document recovered is July 14, 2009."[70] This conduct by C&D is nothing less than bad faith.

**F.    C&D Has Failed to Recover Emails Deleted from October 31, 2008**

[66]    *Id.*
[67]    Ex. 6, (M290) (C&D-FTC3603119)████████████████████████████ *See* Ex. 18, (M297) (C&D-INT-00001981)).
[68]    *See* Ex. 8, (C&D-FTC3492326); Ex. 7, (M291) (C&D-FTC3491073).
[69]    Ex. 18, (M297) (C&D-INT-00001981), at 3 (C&D-INT-00001983).
[70]    Ex. 19, (M298) (C&D-INT-00030643), at 9 (C&D-INT-00030651).

**through July 14, 2009.**

Regarding this litigation, the "Void Period" of nine months is far greater than C&D's self-disclosed "gap period," which relates to the FTC investigation. In particular, C&D's document preservation obligation with respect to Mayer started on or about October 31, 2008 when C&D first learned of potential litigation.[71]  However, C&D has done absolutely nothing to forensically reconstruct this Void Period because it has expressly limited its retrieval efforts to an artificial search start date of July 14, 2009 that has no relation to the Mayer litigation (or even the FTC investigation).

Consequently, emails that Craigie deleted prior to July 14, 2009 have not been substantially produced nor has C&D even claimed to have *attempted* to forensically recover these deleted emails, even after learning that its CEO systematically deleted relevant emails in violation of its litigation hold memos and internal corporate polices.[74]  Given these facts, C&D has violated its document production obligations in this case and has failed to attempt to redress this matter.

**G.    C&D's Recent Misrepresentation in its Public Filings With The SEC.**

C&D stated in its recently filed SEC Form 8-K that "after the FTC investigation and the

---

[71]   Ex. 4, (M288) (C&D-FTC3688866).
[72]   Ex. 19, (M298) (C&D-INT-00030643), at 5 (C&D-INT-00030647).
[73]

Mayer Labs litigation were each initiated, the Company issued instructions [] to preserve any emails [] that might be relevant to the foregoing proceedings. Subsequently, James R. Craigie [] deleted emails and has acknowledged doing so, **although the Company has been able to retrieve substantially all of the deleted emails.**"[75] (emphasis added). ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████ [77] ██████████████████████████████████████ Therefore,

the evidence appears to support the opposite conclusion of that stated in the 8-K. The more accurate conclusion appears to be that *no* emails have been retrieved which Craigie deleted from October 2008 through July 14, 2009 and that the Company has not attempted to retrieve them. This misrepresentation alone further demonstrates the sheer level of recklessness and intent to impede, which occurred at C&D.[79]

Indeed, it was not until January 19, 2012, just a few days before Mayer's attorneys were scheduled to depose Craigie on January 24, 2012, that C&D first disclosed to Mayer documents related to the FTC investigation that put Mayer on notice of the seriousness of this matter. Accordingly, C&D has attempted to obfuscate the facts of this case at every step of the way.

### III. ARGUMENT

####    A.    This Court Has Inherent Authority to Sanction C&D for Spoliation.

---

[74]    Ex. 20, (M304) (C&D-FTC0027896).
[75]    Ex. 3, Church & Dwight, Inc., SEC Form 8-K, (Jan. 10, 2012).
[76]    ██████████
[77]    Ex. 19, (M298) (C&D-INT-00030643), at 11 (C&D-INT-00030654)
[78]    *Id.* at 9 (C&D-INT-00030651).
[79]    Ex. 22, (C&D-FTC3541215) demonstrates additional recklessness in the C&D production. Though the document is authored by James Daniels and sent to numerous employees, who were identified as custodians for production in this litigation, this document was produced only once from the custodian of C&D legal department. When questioned about why this document was not in his files that were produced in this litigation, Daniels was at a loss during his deposition.

---

Mayer is unaware of any precedent where the CEO of a company has habitually ignored litigation hold memo after litigation hold memo when faced with both private litigation and a parallel federal government investigation.  As if this misconduct were not sufficiently egregious, the CEO's purposeful deletion of emails was also in total violation of the Company's comprehensive document retention system and largely undertaken at a time when the Company employed an inadequate document retention backup system. Whatever defense both C&D and Craigie can possibly muster, there is no defense for the nine month period where the CEO systematically deleted emails and for which the Company undertook no effort to restore those documents.

Accordingly, this Court should sanction C&D for (1) intentionally and/or recklessly destroying relevant evidence, and (2) failing to make *any* reasonable and good faith attempt to recover its CEO's missing emails that existed prior to July 14, 2009.   Specifically, Mayer Labs requests that this Court dismiss C&D's affirmative claims.  In addition, as to Mayer Lab's claims against C&D, default is warranted or, in the alternative, an adverse inference and attorneys' fees are appropriate to remedy C&D's spoliation.

Indeed, the destruction of emails with no effort made whatsoever to recover the destroyed emails for over a nine month period clearly constitutes spoliation, which "refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).  The Ninth Circuit has stated that Courts have inherent authority to levy sanctions for the spoliation of evidence, even if a party has not otherwise violated any court order. *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir.1992)

| MAYER LABORATORIES, INC. | -17- | Case No. CV10-04429 EMC |

(Courts have "broad discretion to make ... evidentiary rulings conducive to the conduct of a fair and orderly trial."). These sanctions may include, but are not limited to, dismissal, exclusion of evidence, an adverse inference jury instruction, or monetary sanctions. *Otsuka v. Polo Ralph Lauren Corp.*, 2010 WL 366653, *3 (N.D. Cal. Jan. 25, 2010).

"When choosing among possible sanctions, the Court should consider a sanction designed to: (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore a prejudiced party to the same position he or she would have been in absent wrongful destruction of evidence by the opposing party." *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, at *4 (N.D. Cal. Aug. 17, 2004) (citations omitted). *See also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999).

### B.   Default Judgment Is An Appropriate Remedy.

Default judgment is an appropriate sanction here with regard to C&D's complaint for a declaratory judgment and any affirmative claims made in that filing. This Circuit has established a five-part test to determine whether a terminating sanction is just: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (citation omitted); *see Leon*, 464 F.3d at 958 (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).[80]

---

[80]    It has been noted that the fourth and fifth factors always weigh against a terminating sanction. *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1008 (D. Ariz. 2011). Nonetheless, the Ninth Circuit continues to recognize that without the sanction of default, the ability to delete or preserve electronic data has no threat of real sanction. *Valley Eng'rs Inc. v.*

| MAYER LABORATORIES, INC. | -18- | Case No. CV10-04429 EMC |

C&D's failure to preserve evidence, its CEO's systematic deletion of all emails during the litigation through March 2011, the failure to attempt to retrieve deleted emails during the Void Period, and the resulting delay caused by discovery disputes and the instant motion for sanctions, weigh in favor of default judgment. *See Leon*, 464 F.3d at 958 n.5. (affirming default judgment). The third factor – prejudice – "'looks to whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial or threatened to interfere with the rightful decision of the case.*" Leon*, 464 F.3d at 959 (citation and brackets omitted). Mayer has been prejudiced by the spoliation of Craigie's emails and other communications concerning relevant matters such as the planogram program and C&D's efforts to increase its market share by increasing the requirements in the planogram.    Thus spoliation will force Mayer to rely on "'incomplete and spotty'" evidence at trial. *Leon*, 464 F.3d at 959 (quoting *Anheuser-Busch*, 69 F.3d at 354) (upholding default judgment). As the court found in *Veolia Transp. Services, Inc. v. Evanson*, 2011 WL 5909917, at *5, *6 (D. Ariz. Nov. 28, 2011):

> While the policy favoring disposition of cases on the merits would generally weigh against entry of default, the spoliation here has substantially impeded any effort to decide this case on the merits. Nor does the availability of less severe sanctions make entry of default inappropriate here. Nothing short of entry of default is adequate to correct the substantial prejudice that would result to Veolia if it were required to prosecute its case without the evidence destroyed by Evanson. Indeed, because the evidence that was destroyed here was so likely so central to Veolia's case, an adverse inference instruction would effectively establish Evanson's liability. Although granting default is an extreme sanction, the Court finds it to be necessary here to both protect Veolia from prejudice and to sufficiently deter destruction of electronic data, which is often easily accomplished and highly prejudicial. *See Computer Assoc. Int'l, Inc. v. Am. Fundware, Inc.*, 133 F.R.D. 166, 170 (D. Colo. 1990) ("One who anticipates that...production of damning evidence[] will produce an adverse judgment[] will not likely be deterred from destroying that decisive evidence by any sanction less than the adverse judgment he ... is tempted to thus evade.").

## C.    Alternatively, An Adverse Inference Is Necessary to Remedy C&D's

*Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (citation omitted) (upholding dismissal of interference claims against companies as a discovery sanction); *Leon*, 464 F.3d at 958 (same); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (same).

| MAYER LABORATORIES, INC. | -19- | Case No. CV10-04429 EMC |
|---|---|---|

**Wrongful Conduct.**

"An adverse inference instruction may be appropriate where a party's bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence." *Karnazes v. County of San Mateo*, 2010 WL 2672003 at *2 (N.D. Cal. July 2, 2010) (citation omitted). "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Creative Science Systems, Inc. v. Forex Capital Markets, LLC.*, 2006 WL 870973, at *5 (N.D. Cal. 2006) (citations omitted). Thus, "[w]here one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party." *Id.* quoting *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (citation omitted). Moreover, to establish an adverse inference for the spoliation of evidence, "a finding of 'bad faith' is not a prerequisite to this corrective procedure;" instead, "simple notice" of a document's relevance to potential litigation will suffice. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (citations omitted). *See also Dae Kon Kwon v. Costco Wholesale Corp.*, 2010 WL 571941, *2 (D. Hawai'i Feb. 17, 2010) ("A finding of bad faith is not required for the court to impose sanctions").

In determining whether to impose an adverse inference instruction based on spoliation, district courts in California have applied the Second Circuit's test set forth in *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). *See Lewis v. Ryan*, 261 F.R.D. 513, 521 (S.D. Cal. 2009). This test requires that a party seeking an adverse inference instruction "establish that: '(1) the party having control over the evidence had an obligation to

| MAYER LABORATORIES, INC. | -20- | Case No. CV10-04429 EMC |

preserve it; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense.'" *Id.* (quoting *Residential Funding Corp.*, 306 F.3d at 107). Mayer easily satisfies these elements.

> ### 1. C&D Was Obligated to Preserve Evidence, and Has Failed to Take Reasonable Efforts to Do So.

C&D was obligated to preserve relevant evidence with respect to Mayer no later than approximately October 31, 2008 when it first became aware of possible litigation. *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."). But C&D has breached this duty, and it has failed to make a good faith effort to correct the spoliation caused by its CEO. While C&D claims to have tried to recover emails from a limited "gap period," that effort was not totally successful and masks the failure to even attempt to recover emails from the period of time commencing nine months earlier, *i.e.*, the date of the first litigation hold memorandum related to this litigation. To blatantly fail to preserve or recover these emails is nothing less than bad faith. *Id.* at 1074 ("Documents may be lost and overlooked in large-scale document production, but the abject failure to preserve an entire source of relevant evidence is sanctionable conduct.").

An additional surprise in this litigation is the revelation that the CEO has never been instructed to or has made any efforts to preserve any documents in the 50 or so litigations that C&D has been a party to under Craigie's tenure as CEO. It is reasonable to assume, therefore, that this matter and the related FTC investigation are not the first instances where C&D failed in its obligation to preserve documents. Accordingly, an appropriate remedy for this misconduct would be for notice to be provided to all adverse parties that C&D may have failed to retain and produce relevant documents in litigation.

| MAYER LABORATORIES, INC. | -21- | Case No. CV10-04429 EMC |

### 2.   C&D is Culpable for the Wrongful Conduct of its CEO.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████ Accordingly, the conduct of C&D's most senior officer cannot be explained away as a mere oversight or misunderstanding given the manifest fault involved here over a considerable length of time. *See Leon*, 464 F.3d at 959 (holding party's systematic deletion of data when he knew he had a duty to preserve it "amounted to willful spoliation of relevant evidence."); *In re Napster*, 462 F. Supp. 2d at 1070 ("even if [the spoliator's] 'long standing policies' included deleting emails, [the spoliator] was required to cease deleting emails once the duty to preserve attached").

Corporations are legal entities that can only act through their officers and employees; as such, they must be held responsible for the actions of these individuals, even when these individuals destroy evidence without authorization. *See Philips Electronics North America Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1156 (D. Utah 2011).   This is especially true when evidence is destroyed by upper management and executives and "not low-level employees." *Id.* "To argue that these employees act[] independently and therefore [a corporation] cannot be culpable for their actions is simply not credible." *Id.*

### 3.   Mayer Has Suffered Prejudice From C&D's Wrongful Conduct.

The missing emails at issue here are highly relevant to this dispute because they would likely contain important facts and admissions regarding Mayer's claims that were made during

| MAYER LABORATORIES, INC. | -22- | Case No. CV10-04429 EMC |
|---|---|---|

the time period when C&D first received Mayer's draft complaint on or about October 31, 2008

and when C&D filed its own lawsuit in response on November 21, 2008, a lawsuit that Craigie

has admitted he directly authorized. ████████████████████████████████████████

████████████████████████████████████████[81]

As a result, Mayer is prejudiced by these missing emails because it must now "rely on

incomplete and spotty evidence." *Leon.*, 464 F.3d at 959 (citation and internal quotation marks

omitted). "Moreover, because the relevance of destroyed documents cannot be clearly

ascertained because the documents no longer exist, a party can hardly assert any presumption of

irrelevance as to the destroyed documents." *Id.* (internal quotation marks, alterations, and citation

omitted). *See also Hynix Semiconductor Inc. v. Rambus Inc.*, 591 F. Supp. 2d 1038, 1060 (N.D.

Cal. 2006) ("if spoliation is shown, the burden of proof logically shifts to the guilty party to

show that no prejudice resulted from the spoliation. The reason is that it is in a much better

position to show what was destroyed and should not be able to benefit from its wrongdoing.")

(citations omitted).

Even if C&D asserts it has produced a substantial number of Craigie's missing emails,

this is insufficient to redress its willful spoliation.[82]   *See Philips*, 773 F. Supp. 2d at 1156 ("To

say that any prejudice has been largely remedied ignores that a case can turn on only a few key



| MAYER LABORATORIES, INC. | -23- | Case No. CV10-04429 EMC |

documents."). Accordingly, an adverse inference against C&D is appropriate in this case to ensure that it does not wrongfully benefit from its willful failure to produce relevant documents.

**D.    Mayer is Entitled to Attorneys' Fees.**

A district court may also award sanctions in the form of attorneys' fees under its "inherent powers" against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon*, 464 F.3d at 959 (district court's sanction of attorneys' fees (and dismissal of action) upheld where Court found that party knew of duty to preserve all data and intentionally deleted files and wrote program to write over deleted documents); *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.1997) (discussing a sanction against an attorney). Bad faith can be demonstrated by "delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* at 649.    In this case, Craigie delayed and disrupted the litigation since he knew of his duty to maintain emails, intentionally deleted emails and ultimately was not able to produce any emails for a relevant nine month period in this litigation. In short, Craigie acted in bad faith and was grossly negligent. *Aviva USA Corp. v. Vazirani*, 2012 WL 71020, at *6-9 (D. Ariz. Jan. 10, 2012) (attorneys' fees and adverse inference granted where no plausible explanation given for deleted emails, lapsed memory and lying at depositions about the events relating to the lawsuit).  Consequently, Mayer Labs is entitled to attorneys' fees, and requests that this Court order C&D to pay reasonable attorneys' fees and costs. *See In re Napster*, 462 F. Supp. 2d at 1078 (ordering attorneys' fees and an adverse inference to remedy the wrongful deletion of emails); *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1007 (D. Ariz. 2011)(attorneys' fees and adverse inference charge granted where gross negligence found for failure to suspend ongoing destruction of emails and capture evidence on computer); *Veolia Transp. Services*, 2011 WL 5909917, at *3-4, *6 (hearing set to determine amount of default judgment and attorneys' fees  where Court found willful destruction of

| MAYER LABORATORIES, INC. | -24- | Case No. CV10-04429 EMC |

evidence and bad faith when party refused to pay for maintenance of hard drive image and deleted sent email files prior to a forensic investigation).

## IV.    CONCLUSION

For all of the reasons stated herein, Mayer requests that this Court find that C&D has destroyed evidence in bad faith thus prejudicing Mayer, and order that sanctions be imposed against C&D including (1) a dismissal with prejudice of C&D's claims found in:  Count III for Declaratory Judgment for Intentional Interference with Contractual Relations; Counts IV and V for Violations of the Lanham Act for Trademark Infringement; Counts VI and VII for Violations of the New Jersey Fair Trade Act, Counts VIII and IX for Violations of Unfair Competition, and Count X for Cancellation of the mark MICROTHIN; (2) a default judgment regarding Mayer's Counterclaims, or, alternatively  an adverse inference, operative in all proceedings in this case, that  emails destroyed by C&D and its employees after service of the original complaint in this case would have demonstrated C&D's unlawful monopolistic practices by violating federal and state antitrust laws; (3) an instruction that C&D notify parties opposing C&D in the 50 or so previous litigations that it has participated in where it has violated its obligations to preserve documents; (4)  C&D shall be precluded from introducing any email evidence to or from its CEO due to the unavailable emails which cannot be reclaimed from the CEO's deleted emails; and (5) C&D shall pay to Mayer Labs all reasonable attorneys fees related to all the discovery efforts concerning spoliation and efforts of Mayer's counsel in bringing this motion.

DATED:        February 7, 2012                    Respectfully Submitted,


*/s/ Peter Safirstein*
Peter Safirstein (*pro hac vice*)


Peggy Wedgworth (*pro hac vice*)

| MAYER LABORATORIES, INC. | -25- | Case No. CV10-04429 EMC |

psafirstein@milberg.com
pwedgworth@milberg.com
MILBERG LLP
One Pennsylvania Plaza
New York, New York 10119
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

Paul F. Novak (*pro hac vice*)
MILBERG LLP
One Kennedy Square
777 Woodward Avenue, Suite 890
Detroit, MI 48226
pnovak@milberg.com
Telephone:  (313) 309-1760

Christian Keeney
MILBERG LLP
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
Telephone:  (213) 617-1200

Neil S. Cartusciello (*pro hac vice*)
CARTUSCIELLO & ASSOCIATES, P.C.
104 Mountainside Road
Mendham, New Jersey 07945
Telephone:  (973) 543-8204

Attorneys for Defendant/Counterclaimant
MAYER LABORATORIES, INC.

| MAYER LABORATORIES, INC. | -26- | Case No. CV10-04429 EMC |

1

**CERTIFICATE OF SERVICE**

2       I certify that on February 7, 2012, a true and correct copy of Defendant's Motion for

3   Sanctions as a Result of Spoliation of Evidence, Proposed Order, Affidavit of Paul H. McVoy,

4   Declaration of Peter Safirstein, and Exhibits was served by electronic mail upon the following:

5

6                       Carl W. Hittinger, Esq.
                        DLA PIPER LLP (US)
7                       One Liberty Place
                        1650 Market Street, Suite 4900
8                       Philadelphia, PA 19103-7300
                        carl.hittinger@dlapiper.com

9                       John D. Huh, Esq.
                        DLA PIPER LLP (US)
10                      One Liberty Place
                        1650 Market Street, Suite 4900
11                      Philadelphia, PA 19103-7300
                        john.huh@dlapiper.com

12
                        Lesli Esposito
13                      DLA PIPER LLP (US)
                        One Liberty Place
14                      1650 Market Street, Suite 4900
                        Philadelphia, PA 19103-7300
15                      Lesli.esposito@dlapiper.com

16

17                              /s/ Peter Safirstein____
                                Peter Safirstein
18

19

20

21

22

23

24

25

26

27

28

| MAYER LABORATORIES, INC. | -27- | Case No. CV10-04429 EMC |

1                          UNITED STATES DISTRICT COURT

2                       NORTHERN DISTRICT OF CALIFORNIA

3

4   CHURCH & DWIGHT CO., INC.        )

                            )

5                Plaintiff,     )   Case No. CV10-04429 EMC

                            )

6       vs.                    )

                            )

7   MAYER LABORATORIES, INC.        )

                            )

8             Defendant.    )

                            )

9  _____)

10

11                        **[PROPOSED] ORDER**

12       Before the Court is Defendant and counterclaim Plaintiff Mayer Laboratories' Motion for

13  Spoliation Sanctions [Document No. __] (the "Motion"). Upon review of the Motion and all

14  papers filed in relation to the motion, opposition and reply, the Court FINDS that Church &

15  Dwight spoliated relevant evidence in this litigation. In addition, the Court GRANTS Defendant

16  Mayer Laboratories' Motion for Spoliation Sanctions, and orders that:

17

18       (1) The following claims by Church & Dwight are dismissed with prejudice:  Count III

19  for Declaratory Judgment concerning Intentional Interference with Contractual Relations, Counts

20  IV and V for Violations of the Lanham Act for Trademark Infringement; Counts VI and VII for

21  Violations of the New Jersey Fair Trade Act, Counts VIII and IX for Violations of Unfair

22  Competition, and Count X for Cancellation of the mark MICROTHIN;

23       (2) a default judgment regarding Mayer's Counterclaims, or, alternatively  an adverse

24  inference, operative in all proceedings in this case, that  emails destroyed by C&D and its

25  employees after service of the original complaint in this case would have demonstrated C&D's

26  unlawful monopolistic practices by violating federal and state antitrust laws;

27

28

1   (3) an instruction that C&D notify parties opposing C&D in the 50 or so previous

2   litigations that it has participated in where it has violated its obligations to preserve documents;

3   (4) C&D shall be precluded from introducing any email evidence to or from its CEO due to the

4   unavailable emails which cannot be reclaimed from the CEO's deleted emails; and

5   (5) C&D shall pay to Mayer Labs all reasonable attorneys fees related to all the discovery

6   

7   efforts concerning spoliation and efforts of Mayer's counsel in bringing this motion.

8   

9        IT IS SO ORDERED this ___ day of _____, 2012.

10  

11  

12  

13                      EDWARD M. CHEN

                    United States District Judge

14  

15  

16  

17  

18  

19  

20  

21  

22  

23  

24  

25  

26  

27  

28  

DOCS\594310v1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHURCH & DWIGHT CO., INC.     )
                                 )
               Plaintiff,    )   Case No. CV10-04429 EMC
                                 )
     vs.                        )
                                 )
MAYER LABORATORIES, INC.    )
                                 )
              Defendant.    )
                                 )
                                 )

## **AFFIDAVIT**

STATE OF NEW YORK)

                       ss.:

COUNTY OF NEW YORK)

PAUL H. MCVOY, being first duly sworn, deposes and says:

     1.    I am the Director of Litigation Support for Milberg, LLP and have held this position since February 2009. I have been in the Litigation Support field for 10 years in a variety of roles.

     2.    The opinions expressed herein are based upon my examination of documents produced in this matter, both in discovery and during depositions, and my extensive experience in the litigation support field handing discovery issues for many types of matters over 10 years.

     3.    I have examined the material produced by Church & Dwight and attributed to James Craigie as custodian. The material I examined included 751 calendar entries, 4 email messages and 48 attachments, which appear to be produced without their parent email, and were dated between October 16, 2008 and July 14, 2009.

     4.    ███████████████████████████████████
██████████

5.    I have been asked to render my opinion regarding the ability to reconstruct a person's email ███████████████████

6.    In order to completely reconstruct an email box, a record would need to have been kept of every email that was sent or received by that person.  Although email servers generally keep sent and receipt logs, the logs are normally too large to keep for more than 7 to 14 days as they record every email that is registered by the server, both intentionally sent and received email, but also the large number of unsolicited SPAM email.

7.    In my experience, logs are not kept for periods longer than two weeks.

8.    Without the availability of an email transaction log described above, another approach to trying to reconstruct an email box is to restore the email from a backup or archive. Using a series of backups, one could theoretically reconstruct an email box as it appeared on a specific date, at a specific moment.

9.    Using backup media to reconstruct an email box is not perfect, and may not give a complete restoration of an email box because the backup makes a snapshot of an email box at a given moment.  If the user receives and deletes emails in between the backup periods, the emails would be permanently lost.

10.    From my understanding, there was no email backup media retained for the period of October 2008 to May 2010, as detailed in the document bates stamped C&D-INT-00002192 to 93.

11.    It is possible to attempt to reconstruct email from searching for email in other users email boxes for any email that included the target user's email address in any of the address fields.  This method, however, is extremely unreliable for a couple of reasons: one, it assumes that other users did not also destroy emails at _any_ time, and two, it assumes that you can search _every_ email box of _every_ user that sent or received emails from the target.  Because there is no log to help reconstruct who the target may have emailed, this task would be impossible.

12.    Finally, it is also possible to use computer forensics to retrieve some deleted email from a computer's hard drive.  This method would be the least reliable form of email box reconstruction because once emails are deleted, the computer's operating system will begin to

DOCS\594528v1

1    reclaim the storage space for new files.  The result of this process is that some email is lost

2    permanently, while other email may only be partially retrieved.

3         13.      From the materials produced by Church & Dwight in this case, it appears that

4    Church & Dwight hired an outside vendor to attempt to retrieve deleted email, however they

5    were unsuccessful and retrieved no email from Mr. Craigie's computer between January 1, 2008

6    to May 1, 2010.

7

8                                                                Paul H. McVoy

9

10   Sworn to before me this 7th day of

11   February , 2012

12                                 Notary Public

13

14            **ANGELA H CHUA**
         **Notary Public, State Of New York**
               **No. 01CH6219295**
14          **Qualified in New York County**
         **Commission Expires 03/22/2014**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCS\594528v1

1  **MILBERG LLP**
   PAUL F. NOVAK (*pro hac vice*)
2  One Kennedy Square
   777 Woodward Avenue, Suite 890
3  Detroit, MI 48226
   Telephone:  (313) 309-1760
4  Facsimile:  (313) 447-2038

5  **MILBERG LLP**
   PETER SAFIRSTEIN (*pro hac vice*)
6  PEGGY WEDGWORTH (*pro hac vice*)
   One Pennsylvania Plaza
7  New York, New York 10119
   Telephone:  (212) 594-5300
8  Facsimile:  (212) 868-1229

9
   **CARTUSCIELLO & ASSOCIATES, P.C.**
10 NEIL S. CARTUSCIELLO (*pro hac vice*)
   104 Mountainside Road
11 Mendham, New Jersey 07945
   Telephone:  (973) 543-8204
12

13 Attorneys for Defendant/Counterclaimant
   MAYER LABORATORIES, INC.
14

15                  **UNITED STATES DISTRICT COURT**

16                  **NORTHERN DISTRICT OF CALIFORNIA**

17

18
   CHURCH & DWIGHT CO., INC.,           CASE NO. 3:10-cv-4429-EMC
19
                Plaintiff,              **DECLARATION OF PETER**
20                                      **SAFIRSTEIN IN SUPPORT OF**
                                        **DEFENDANT MAYER**
21        v.                            **LABORATORIES, INC.'S MOTION**
                                        **FOR SANCTIONS AS A RESULT OF**
22                                      **CHURCH & DWIGHT'S SPOLIATION**
   MAYER LABORATORIES, INC.,            **OF EVIDENCE**
23
                Defendant.             <u>Oral Argument Requested</u>
24
                                        HEARING DATE: March 16, 2012
25                                      HEARING TIME: 1:30 p.m.
                                        COURTROOM: TBD
26

27

28

**I, PETER SAFIRSTEIN, DECLARE AS FOLLOWS:**

1.      I am an attorney duly licensed to practice before the Supreme Court of the United States, the 2nd, 3rd and 4th Circuits, the Southern and Eastern Districts of New York, the District of New Jersey and am admitted to practice *pro hac vice* in this case.  I am a Partner with the law firm of Milberg LLP, attorneys of record for the Defendant/Counterclaimant.

2.      I submit this declaration in support of Defendant's Motion for Sanctions as a Result of Church & Dwight's Spoliation of Evidence.

3.      Attached as Exhibit 1 is a true and correct copy of the document bearing the bates number C&D-INT-00001971 ███████████████████████████████████████
████████████████████████████████

5.      Attached as Exhibit 2 is a true and correct copy of Exhibit M299██████████████
███████████████████████████████████████

6.      Attached as Exhibit 3 is a true and correct copy of Church & Dwight Co., Inc.'s SEC Form 8-K filed on January 10, 2012.

7.      Attached as Exhibit 4 is a true and correct copy of the document bearing the bates number C&D-FTC3688866███████████████████████████████████
████████████████████████████████

8.      Attached as Exhibit 5 is a true and correct copy of██████████████████████
███████████████████████████████████████

9.      Attached as Exhibit 6 is a true and correct copy of the document bearing the bates number C&D-FTC3603119███████████████████████████████████
████████████████████████████████

10.      Attached as Exhibit 7 is a true and correct copy of the document bearing the bates number C&D-FTC3491073███████████████████████████████████
████████████████████████████████

11.      Attached as Exhibit 8 is a true and correct copy of the document bearing the bates number C&D-FTC3492326.

12.     Attached as Exhibit 9 is a true and correct copy of the document bearing the bates number C&D-FTC3491064 ███████████████████████████ ███████████████

13.     Attached as Exhibit 10 is a true and correct copy of the document bearing the bates number C&D-FTC3491080 ███████████████████████ ███████████████

14.     Attached as Exhibit 11 is a true and correct copy of the document bearing the bates number C&D-FTC3651732 ██████████████████████████████ ███████████████

15.     Attached as Exhibit 12 is a true and correct copy of Exhibit M308 ████████ ████████████████████████

16.     Attached as Exhibit 13 is a true and correct copy of the document bearing the bates number C&D-FTC3688791 ████████████████████████████ ███████████████

17.     Attached as Exhibit 14 is a true and correct copy of the document bearing the bates number C&D-FTC3583983.

18.     Attached as Exhibit 15 is a true and correct copy of the document bearing the bates number C&D-INT-00002211 ███████████████████ ███████████████████

19.     Attached as Exhibit 16 is a true and correct copy of the document bearing the bates number C&D-FTC3488212 ███████████████████████████ ███████████████

20.     Attached as Exhibit 17 is a true and correct copy of the document bearing the bates number C&D-FTC3688793.

21.     Attached as Exhibit 18 is a true and correct copy of the document bearing the bates number C&D-INT-00001981 █████████████████████████ ███████████████████

22. Attached as Exhibit 19 is a true and correct copy of the document bearing the bates number C&D-INT-00030643 ██████████████████████████████ ████████████████████████

23. Attached as Exhibit 20 is a true and correct copy of the document bearing the bates number C&D-FTC0027890 ███████████████████████████████ ███████████████

24. Attached as Exhibit 21 is a true and correct copy of the document bearing the bates number C&D-INT-00002193 ███████████████████████████████ ████████████████████

25. Attached as Exhibit 22 is a true and correct copy of the document bearing the bates number C&D-FTC3541213 ██████████████████████████████████ ███████████████

26. Attached as Exhibit 23 is a true and correct copy of the document bearing the bates number C&D-FTC-NR-01446295.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of February, 2012 in New York, New York.


                                            */s/ Peter Safirstein*
                                            PETER SAFIRSTEIN

4